OHIO STATE BAR ASSOCIATION *v.* McCRAY.

[Cite as *Ohio State Bar Assn. v. McCray,*
109 Ohio St.3d 43, 2006-Ohio-1828.]

(No. 2005–1530—Submitted December 13, 2005—Decided April 26, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Risa Culp McCray of Dayton, Ohio, Attorney Registration No. 0032119, was admitted to the Ohio bar in 1974.

{¶ 2} On October 11, 2004, relator, Ohio State Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in July 2005. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} In June 2000, Michael Beam retained respondent to represent him in a divorce case in Montgomery County. Beam agreed to pay respondent $150 per hour for out-of-court time spent by respondent on his case and $225 per hour for in-court time. He signed a fee agreement and paid an initial retainer of $2,500 by July 20, 2000.

{¶ 4} During her representation of Beam, respondent informed him about the costs of particular tasks that she performed on his behalf, but she did not prepare invoices or document the hours spent on his case at the time she did the work. By February 1, 2001, respondent had received $5,500 from Beam as payment for legal fees and third-party expenses. Respondent placed that money in her law-office operating account rather than in a client trust account.

{¶ 5} On March 16, 2001, an agreed order was filed in Beam's divorce case allowing the parties' marital residence to be sold, with the proceeds to be divided equally between Beam and his wife. Beam's share of the proceeds from that sale was $5,219.85. When respondent received those funds on Beam's behalf, she placed them in her client trust account on June 4, 2001. The trial court had ordered that those funds be placed in an escrow account administered by Beam's

attorney, and respondent sent Beam a letter on June 13, 2001, advising him that she had complied with that order by placing the funds in her client trust account. The trial court's order also stated that those funds "shall remain escrowed until further Court Order."

{¶ 6} Beam discharged respondent as his lawyer on November 9, 2001. Respondent did not deliver to Beam or to his new attorney the $5,219.85 held in her client trust account and did not seek the trial court's guidance on the proper disposition of the funds.

{¶ 7} On December 20, 2001, respondent removed $5,000 of the $5,219.85 from her trust account and applied it to additional fees and expenses that respondent asserts were owed by Beam. That withdrawal was not authorized by the trial court or by Beam in writing. Respondent maintains, however, that Beam had told her that she could apply his funds in her trust account toward the $5,724.43 that he still owed her for legal fees and expenses. The remaining $219.85 belonging to Beam stayed in respondent's trust account.

{¶ 8} On March 28, 2002, the trial court ordered that respondent release to Beam the $5,219.85 that respondent had been directed by the court to hold in her client trust account following the sale of the marital property. Respondent, however, had already withdrawn $5,000 of those funds three months earlier.

{¶ 9} After examining these actions, the board found that respondent had violated DR 9–102(A)(2) (requiring a lawyer to maintain client funds in a separate, identifiable bank account). Although respondent was also charged with violations of DR 1–102(A)(5) (barring conduct prejudicial to the administration of justice) and 7–106(A) (requiring compliance with a tribunal's rulings made in the course of a proceeding), the panel and the board concluded that relator had not presented the clear and convincing evidence required to prove those charges.

### Sanction

{¶ 10} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board found no aggravating factors in connection with respondent's actions but did find several mitigating factors: the absence of any prior disciplinary violations by respondent, the absence of a dishonest or selfish motive, respondent's full and free disclosure to the board and her cooperative attitude toward the disciplinary process, and letters to the board attesting to respondent's good character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 11} Relator recommended that respondent be suspended from the practice of law for six months, with the entire suspension stayed, but the panel and the

full board recommended a public reprimand rather than a suspension. The case is now before us on relator's objections to the board's recommendation.

{¶ 12} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We accept the board's factual findings and its legal conclusion concerning DR 9–102(A)(2), as well as the board's recommended sanction.

{¶ 13} First, the violation of DR 9–102(A)(2) is evident from the facts admitted by respondent. In 2000 and 2001, she placed into her office operating account—rather than a client trust account—the $5,500 paid to her by Beam, even though she had not yet earned all of those fees at the time she received the money. That action violated DR 9–102(A)(2)'s requirement that unearned fees belong to a client and must be kept in a client trust account.

{¶ 14} We also agree with the board's conclusion that respondent's December 2001 withdrawal of $5,000 from her client trust account need not be considered prejudicial to the administration of justice under DR 1–102(A)(5). Respondent's action does not appear to have adversely affected Beam's divorce case, and, as counsel for both parties indicated to the panel, Beam suggested in a deposition that he expected respondent to apply the funds in her trust account toward the more than $5,700 in legal fees and expenses that he had owed her.

{¶ 15} Also, nothing in the record suggests that respondent's actions were intended to, or did, deceive the trial court or Beam. In fact, relator voluntarily dismissed an allegation that respondent had engaged in dishonest or fraudulent conduct. In the end, respondent appears to have done exactly what she says she did: apply $5,000 of her client's funds toward the more than $5,700 in legal fees and expenses that he owed her. Her representation of Beam had ended at that point, and Beam, according to relator's counsel, told respondent "not to worry about the money that [he] owed her because she had the money in her trust account." We see nothing in respondent's actions that was prejudicial to the administration of justice or to Beam.

{¶ 16} We cannot agree, however, with the board's conclusion that relator failed to prove a violation of DR 7–106(A). Respondent did violate the trial court's order of March 16, 2001, which expressly directed that Beam's share of the proceeds from the sale of the marital property "shall remain escrowed until further Court Order." By respondent's own admission, she withdrew $5,000 from the escrowed funds in December 2001 without securing a court order allowing her to do so. That action violated DR 7–106(A), which states: "A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."

{¶ 17} Respondent's decision to disregard the trial court's order cannot be described as a good-faith test of that order. Respondent does appear to have acted in good faith, but not in a way that DR 7–106(A) allows. To accomplish her reasonable goal of securing payment from Beam for the legal services she had provided to him, respondent should have asked the trial court to revisit its March 2001 order after Beam severed his professional relationship with her in November of that year. Having failed to seek a modification of the trial court's order, however, respondent had no legal or ethical right to violate that order by withdrawing the funds, no matter how well intentioned her actions may have been.

{¶ 18} We have reached a similar conclusion in past cases in which attorneys have violated court orders. See, e.g., *Disciplinary Counsel v. Ewing* (1998), 83 Ohio St.3d 314, 699 N.E.2d 928 (finding a violation of DR 7–106(A) when a lawyer had disbursed legal fees from a trust fund to himself despite orders from two courts barring him from doing so); *Disciplinary Counsel v. Pagac* (1995), 72 Ohio St.3d 341, 650 N.E.2d 423 (finding a violation of DR 7–106(A) when a lawyer had intentionally failed to respond to a subpoena).

{¶ 19} Respondent's actions warrant a public reprimand. The board cited no aggravating factors that might prompt us to impose a harsher sanction, and it did identify several significant mitigating circumstances, including respondent's 31 years of practice without a disciplinary violation, the absence of any dishonesty or selfishness on the part of respondent, and her cooperative attitude. We have ordered a public reprimand in similar circumstances. See, e.g. *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369 (public reprimand imposed for three disciplinary violations when no aggravating circumstances were shown and when the lawyer had committed no prior disciplinary violations and had provided significant pro bono services to her community and the legal profession); *Dayton Bar Assn. v. Schram*, 98 Ohio St.3d 512, 2003-Ohio-2063, 787 N.E.2d 1184 (public reprimand was appropriate sanction for attorney's conduct in charging a nonrefundable fee and failing to promptly return the unearned portion when attorney had no prior disciplinary record, cooperated in the disciplinary process, and made restitution to the client); *Cincinnati Bar Assn. v. Randolph* (1999), 85 Ohio St.3d 325, 708 N.E.2d 192 (public reprimand was appropriate sanction for attorney's collection of an excessive fee and his failure to promptly return client funds when the misconduct was an isolated act, the client's funds were returned, and the attorney accepted complete responsibility for his actions).

{¶ 20} To be sure, commingling of funds is a serious violation, as is an attorney's failure to follow a court order. Yet the cases in which we have imposed a harsher sanction than a public reprimand involved more pervasive

misconduct than is present in this case. See, e.g., *Cincinnati Bar Assn. v. Witt*, 103 Ohio St.3d 434, 2004-Ohio-5463, 816 N.E.2d 1036 (stayed six-month suspension ordered for an attorney who always told clients that his fees were earned upon receipt and often made cash withdrawals from his client trust account without appropriate recordkeeping); *Dayton Bar Assn. v. Rogers* (1999), 86 Ohio St.3d 25, 711 N.E.2d 222 (stayed one-year suspension ordered for an attorney who deposited his own funds in a client trust account to prevent his wife from attaching the funds during their divorce proceedings). In light of the isolated nature of respondent's actions during her lengthy legal career, the lack of any selfish or dishonest motives on her part, and her cooperation during the disciplinary process, we hold that a public reprimand is sufficient to ensure that she will not repeat this misconduct.

{¶ 21} Accordingly, respondent is hereby publicly reprimanded. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 22} I respectfully dissent from the conclusion that respondent's conduct was not prejudicial to the administration of justice under DR 1–102(A)(5). Even though no apparent harm resulted from respondent's conduct, respondent nonetheless chose to ignore a court order. Such conduct, in my view, violates DR 1–102(A)(5). Moreover, I disagree with the sanction imposed on respondent. I believe that a six-month suspension, with a conditional stay, would be a more appropriate sanction.

O'CONNOR and LANZINGER, JJ., concur in the foregoing dissenting opinion.

---

Taft, Stettinius & Hollister, L.L.P., and Hugh E. Wall III; Nolan, Sprowl, Smith & Finke and Edward M. Smith; Eugene P. Whetzel, for relator.

J. Hollingsworth, L.L.C., and Jonathan Hollingsworth, for respondent.