STARK COUNTY BAR ASSOCIATION *v.* AKE.

[Cite as *Stark Cty. Bar Assn. v. Ake,*
111 Ohio St.3d 266, 2006-Ohio-5704.]

(No. 2006-0729—Submitted May 24, 2006—Decided November 15, 2006.)

**Per Curiam.**

{¶ 1} Respondent, David S. Ake of Canton, Ohio, Attorney Registration No. 0000103, was admitted to the practice of law in Ohio in 1972. On October 11, 2004, relator, the Stark County Bar Association, charged respondent with five counts of professional misconduct all related to contumacious conduct that he committed during proceedings to dissolve his marriage. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, which the board adopted.

### Misconduct

{¶ 2} Respondent, a successful practitioner in personal-injury and domestic-relations law, and his wife, Janet, filed for dissolution of their marriage in January 2001. The case, which became protracted and acrimonious, was assigned for some postdecree proceedings to visiting Judge Thomas D. White. Janet was represented by counsel throughout the proceedings; however, respondent initially represented himself, committing much of the charged misconduct while acting as his own attorney. Judge White eventually found respondent in contempt for his conduct as alleged in Counts I through V; however, these findings were later dismissed as part of the comprehensive resolution to the couple's litigation.

*Count I—Withdrawal of Funds in Violation of Court Order*

{¶ 3} On August 26, 2002, Judge White issued an order temporarily restraining respondent from withdrawing funds from a FirstMerit Bank account until further order of the court. Respondent opposed the restraining order and filed several motions to vacate the order over the next few weeks. On October 31, 2002, Judge White overruled respondent's motion to vacate.

{¶ 4} After Judge White's ruling on October 31, respondent consciously violated the temporary restraining order by writing a check on the bank account to his secretary for $94,000. One week later, the funds were wire-transferred to Naples, Florida, to pay for a condominium that respondent had agreed to buy.

{¶ 5} At the panel hearing, respondent explained why he had disregarded Judge White's order. His frustration with the court's ruling was particularly apparent from this exchange with the panel chairperson:

{¶ 6} "Q. All right. So you got this August 26 order on August the 26th, and it says you can't take any money out of that account.

{¶ 7} "Did you take money out of that account?

{¶ 8} "A. In October.

{¶ 9} "Q. In violation of the court order?

{¶ 10} "A. Yes, sir.

{¶ 11} "Q. Knowing that you're in violation of the court order?

{¶ 12} "A. Yes, sir.

{¶ 13} "Q. What did you do with it?

{¶ 14} "A. I had two obligations that I had incurred prior to.

{¶ 15} "Q. No. Not why did you take it out. What did you do with it?

{¶ 16} "A. I gave it to—I transferred it to my secretary, so that when I knew that I had to wire it to Florida on—I think within a few days after that, and so that it could be wired directly down and pay the obligation.

{¶ 17} "Q. Mr. Ake, when you took this money out of this account, you knew that was going to put you in contempt of court, didn't you?

{¶ 18} "A. I—Yes, I knew. The short answer, yes.

{¶ 19} "Q. I mean, you thought about it, realized, 'I'm in contempt of court but I'm going to do it anyway'; is that what you're telling me?

{¶ 20} "A. I believed I had no choice.

{¶ 21} "Q. Well, you could have complied with the Court's order; that would have been a choice, wouldn't it?

{¶ 22} "A. And then I would—I don't know whether you want me to explain or try to explain or not. I mean, yes, I knew. I mean, the short answer, if you're cross-examining me, yes, I knew I was in violation of the Court order.

{¶ 23} "Q. Well, the real answer is, you had some obligation, you felt you needed this money to do it to meet your obligations, and you decided to take the money out and take your chances and be in contempt as opposed to letting somebody in Florida sue you for breach of contract. That's about it, isn't it?

{¶ 24} "A. Plus, I also believed that the Court order was not—wouldn't have been upheld on appeal and I believe that to this day.

{¶ 25} "Q. Do you not see an ethical violation in deliberately, as an attorney violating the Court order?

{¶ 26} "A. Yes, sir. I do. I also see ethical violations in breaching contracts with people, putting people into situations where they are personally harmed by my actions. And, in this case, no one—no one other than the written word of the Court order, no one was harmed. My wife received every dime that she was entitled to receive. At the time that I took the money out, my wife owed me money.

{¶ 27} "Q. Is it your thinking that somebody has to be financially harmed for there to be an ethical violation—

{¶ 28} "A. No, sir.

{¶ 29} "Q.—when you deliberately ignore a Court order?

{¶ 30} "A. If the restraining order goes to holding my personal funds for some reason, there should be a reason, and if I don't owe anybody any money to hold those funds. I am perfectly—I believe and had I known we'd be here today, I would have appealed it.

{¶ 31} "Had I taken this to the Fifth District Court of Appeals, that I believe the Court of Appeals would have vacated the restraining order as overbroad, a prior restraint on my—on my account, and having nothing to do with the facts and issues of this case. That's my belief."

### Count II—Encumbrance of Marital Residence in Violation of Court Order

{¶ 32} Also during the dissolution proceedings, respondent and Janet agreed and Judge White ordered that "neither party shall incur any debt using the marital real estate as collateral, or in any other way encumber the marital real estate." On April 1, 2002, respondent consciously violated this order by using his one-half interest in the property to secure a $400,000 line of credit that he individually obtained. Respondent claimed that Janet had consented to this transaction at a time when they were considering reconciliation and that he saw this consent as an oral modification of the dissolution agreement on which Judge White's order was based.

### Count III—Violation of the Court's Order on Pet Care

{¶ 33} Respondent and his wife agreed and the court ordered that respondent keep and care for the couple's very large dogs and allow Janet to visit them. Respondent admitted that he violated the court's custody order. Without telling Janet, respondent gave up one dog to the local humane society, falsely claiming that his mother-in-law was unable to take care of the animal. Respondent later tried to recover the dog at Janet's request, but by that time the dog had been given to someone else.

{¶ 34} Defending his actions, respondent asserted that neither the dissolution agreement nor the incorporating court order required him to notify Janet of how he was caring for the dogs. Respondent testified that the real reason he had relinquished the dog was that it kept escaping from his enclosure. Respondent admitted that he had lied to the humane society about his reasons for giving up the dog, but testified that he thought the lie would improve the dog's chances for adoption.

### Count IV—Failure to Communicate Information on Life Insurance

{¶ 35} By court order, respondent was required to give Janet records confirming the value of his life insurance policy and her designation as beneficiary. Respondent testified that he had instructed his insurance carrier to supply this information to Janet. The company apparently replied in a letter, advising that its representatives were permitted to discuss policy terms only with the owner.

{¶ 36} Respondent did not promptly provide the necessary documents to Janet. He claimed that he never read the insurance company's letter and thus did not consciously fail to provide the documentation. He also pointed out that because he never changed the policy beneficiary, no harm resulted from his delay.

### Count V—Failure to Pay Ordered Expenses

{¶ 37} On November 21, 2001, the court ordered respondent to pay for approximately $14,000 in tuition, books, and health insurance for Janet. Respondent knew of but did not comply with the court's order, claiming that Janet owed a sum of money to him against which the ordered expenses should be set off. The court eventually determined that respondent was not entitled to a setoff, and respondent delinquently paid Janet the ordered amount.

{¶ 38} The board found, as did the panel, that respondent had violated each of the following Disciplinary Rules relative to all five counts in the complaint: DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), and 7–102(A)(1) (prohibiting a lawyer from taking any action on behalf of his client that the lawyer knows will serve merely to harass or maliciously injure another). Adopting the panel's report, the board explained:

{¶ 39} "This controversy is an excellent example why no one should ever represent himself or herself in a domestic relations action. Respondent deliberately violated a court's order on five separate occasions because he disagreed with the order and because it suited his economic interest to do so. Respondent candidly admitted as much. He committed these violations not just as a party but as an attorney of record and officer of the court. Respondent's counsel argued that not every contempt of court is an ethical violation, which is true. Counsel gave the example of a heated exchange between an attorney and judge in the courtroom resulting in a [finding of] contempt. After lunch, cooler tempers prevail, apologies are made and the trial proceeds. This may well not be an ethical violation but the analogy does not fit [this] case. Respondent deliberately, and in a calculated fashion, ignored a court's order on numerous occasions, even to the point of transferring money to his secretary's account. This was hardly a

spontaneous act in the heat of battle. The fact that Respondent eventually made his ex-wife financially whole and Judge White purged the findings of criminal contempt does not change the intentional nature of Respondent's conduct."

## Recommended Sanction

{¶ 40} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 41} As to aggravating factors, the board found, consistently with the panel's report, that respondent's actions were dishonest and self-serving and that he had committed multiple acts of misconduct, repeatedly violating several of the same Disciplinary Rules. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). The board also found that respondent refused to recognize that his conduct rose to the level of an ethical violation.

{¶ 42} As to mitigating factors, the board found that respondent had no prior record of discipline. BCGD Proc.Reg. 10(B)(2)(a). Respondent also had fully and freely disclosed during the disciplinary process the facts underlying the charges against him. BCGD Proc.Reg. 10(B)(2)(d). Two witnesses, one a Stark County Family Court judge, the other a prominent local attorney, also testified at length as to respondent's good character and professional reputation. Respondent submitted numerous similarly complimentary character references from judges, magistrates, and others in his community.

{¶ 43} Relator advocated that respondent be suspended from practicing law for one year but that the suspension be stayed on the condition that he commit no further misconduct. Arguing that his conduct did not violate any Disciplinary Rule, respondent asked for dismissal of the complaint. The board, adopting the panel's proposed sanction, recommended a six-month suspension, all stayed provided that he commit no further misconduct.

## Review

{¶ 44} Consistently with the ABA Standards for Imposing Lawyer Sanctions (1992), Preface and Standard 3.0, when imposing a sanction for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases. *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 28; *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

{¶ 45} Respondent has not filed objections to the findings that he consciously violated court orders as alleged in Counts I through V and that his actions constituted violations of the Disciplinary Rules cited by the board. These violations represent abuses of the legal process and disserve the lawyer's professional duty to honor and protect the legal system. For a similar infraction—the knowing violation of a court order or rule that causes injury or potential injury or interferes or potentially interferes with a legal proceeding—ABA Standard 6.22 advises that a suspension from the practice of law is generally appropriate. See, also, *In re Conduct of Chase* (2005), 339 Or. 452, 121 P.3d 1160 (lawyer's license to practice suspended for 30 days for repeatedly failing to comply with a court order for child support).

{¶ 46} Mitigating circumstances, however, support the stayed suspension recommended in this case. Frustration with judicial rulings never excuses a lawyer, while acting on his own behalf or on behalf of a client, from abiding by a court order. Nevertheless, we are convinced by the testimony and other evidence extolling respondent's integrity and competence that he would not disobey a court order in any situation other than the charged atmosphere of ending his own marriage. We are therefore confident that respondent will never repeat his transgressions. Moreover, despite the potential harm and risk of interference posed by respondent's disrespect, we note that Judge White dismissed the contempt citation against respondent with his ex-wife's consent and that neither of them filed the underlying grievance against respondent.

{¶ 47} Thus, upon review, we adopt the board's findings of misconduct and recommendation. For his violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 7–102(A)(1), respondent is suspended from the practice of law in Ohio for six months. The suspension is stayed, however, on the condition that he commit no further misconduct. If respondent violates the condition, the stay will be lifted and he shall serve the entire suspension.

{¶ 48} Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., LUNDBERG STRATTON and O'CONNOR, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 49} I respectfully dissent. "A lawyer shall not disregard * * * a ruling of a tribunal made in the course of a proceeding * * *." DR 7–106(A). The rule could not be more clear; a lawyer may not violate a court order. Ake not only acknowledged that he violated the order of the trial court, he brazenly acknowl-

edged that he had supplanted the trial court's judgment with his own: "I also believed that the Court order was not—wouldn't have been upheld on appeal and I believe that to this day."

{¶ 50} We have previously held that a violation of a trial court's order is a violation of DR 7–106(A). *Ohio State Bar Assn. v. McCray*, 109 Ohio St.3d 43, 2006-Ohio-1828, 845 N.E.2d 509, ¶ 17–18. We have sanctioned more severely than the majority does here conduct similar to that of respondent. *Stark Cty. Bar Assn. v. Osborne* (1991), 62 Ohio St.3d 77, 578 N.E.2d 455 (one-year suspension for violating court order).

{¶ 51} Our system of justice rests upon respect for judicial tribunals and their orders. Lawyers may not choose which orders they will respect. I would suspend respondent from the practice of law for six months.

LUNDBERG STRATTON and O'CONNOR, JJ., concur in the foregoing opinion.

---

John A. Murphy Jr. and Richard S. Milligan, for relator.

Charles J. Kettlewell, for respondent.