CLEVELAND BAR ASSOCIATION *v.* KRAUS.

[Cite as *Cleveland Bar Assn. v. Kraus,* 116
Ohio St.3d 302, 2007-Ohio-6458.]

(No. 2007–1547—Submitted September 12, 2007—Decided December 11, 2007.)

---

**Per Curiam.**

{¶ 1} Respondent, David P. Kraus of Westlake, Ohio, Attorney Registration No. 0039592, was admitted to the practice of law in Ohio in 1988. On January 17, 2001, we suspended respondent's license to practice for 18 months after finding that he had neglected clients' cases, had failed to promptly deliver funds to which clients were entitled, and had withdrawn as counsel without taking reasonable steps to avoid prejudice to clients. *Cuyahoga Cty. Bar Assn. v. Kraus,* 91 Ohio St.3d 25, 2001-Ohio-234, 740 N.E.2d 1092. We stayed the suspension, however, on the conditions that respondent complete a monitored probation period, make restitution, and obtain treatment for the alcoholism that contributed to cause his misconduct. Respondent complied with these conditions, and on November 8, 2002, we terminated his probation. See *Cuyahoga Cty. Bar Assn. v. Kraus,* 97 Ohio St.3d 1218, 2002-Ohio-6299, 778 N.E.2d 1045.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for two years, based on findings that he (1) neglected the cases of four additional clients, (2) failed to return funds to which two clients were entitled, and (3) notarized a client's signature in violation of the jurat. The board further recommends a stay of the second year of this suspension, provided that respondent continue treatment for his chemical dependence and serve under a one-year monitored probation. On review, we agree that respondent violated the Code of Professional Responsibility as found by the board and that a two-year suspension, with one year stayed on conditions, is appropriate.

{¶ 3} Relator, Cleveland Bar Association, charged respondent in a multicount amended complaint with professional misconduct, including violations of DR 1–

102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 6–101(A)(3) (prohibiting neglect of entrusted legal matters), and 9–102(B)(4) (requiring a lawyer to promptly deliver funds that a client is entitled to receive). A panel of the board considered the cause on the parties' consent-to-discipline agreement, filed pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel accepted the agreement, found the stipulated facts and misconduct, and recommended the sanction that the parties jointly proposed—the two-year suspension with one year stayed on conditions. The board adopted the panel's findings of misconduct and recommendation.

## Misconduct

### Count I—The McDonald Case

{¶ 4} In July 2004, respondent agreed to represent Carolyn Ann McDonald in a personal-injury claim against a department store. Respondent negotiated extensively to resolve McDonald's claim, and the parties settled the dispute. In April 2005, the department store's insurer sent respondent a check, made payable to respondent and his client, for $1,500.

{¶ 5} McDonald authorized respondent to endorse the check and settlement agreement on her behalf. Respondent signed McDonald's name as instructed, but he also notarized her signature on the settlement agreement, falsely stating that he had witnessed the signing. Respondent then delayed sending McDonald her $1,000 share of the settlement proceeds. Though respondent sent McDonald $350 shortly after he received the settlement check, he did not deliver the $650 balance until December 15, 2005.

{¶ 6} By falsely representing that he had witnessed McDonald's signature as a notary, respondent violated DR 1–102(A)(4). By failing to promptly pay McDonald all the money to which she was entitled, respondent violated DR 9–102(B)(4).

### Count II—The Griffin Case

{¶ 7} In March 2005, Shirley Griffin retained respondent to defend her son against criminal charges in Cuyahoga County Common Pleas Court. Griffin paid respondent a flat fee of $1,500. Respondent consulted with the Griffin family on the telephone and in person about the son's case and also discussed discovery with the assigned assistant prosecutor.

{¶ 8} In June 2005, respondent appeared in court with his client and, on his client's behalf, entered into a plea agreement with the assistant prosecutor. The

court scheduled sentencing for July 13, 2005. Respondent did not appear for that proceeding, nor did he appear for the rescheduled sentencing hearing two days later. When respondent failed to appear later that month for another rescheduled sentencing hearing, the court appointed new counsel for Griffin's son.

{¶ 9} By failing to appear for sentencing proceedings in the Griffin case, respondent violated DR 1–102(A)(5) and 6–101(A)(3).

## Count III—The Homan Case

{¶ 10} Respondent defended Lee C. Homan in Berea Municipal Court against charges of domestic violence, and in April 2001, he obtained a dismissal of the case against his client. In January 2006, respondent represented Homan again in the municipal court, this time defending him against charges of telephone harassment. Respondent consulted extensively with his client on the telephone and in person and received $500 for his services.

{¶ 11} Respondent entered an appearance and a not-guilty plea on Homan's behalf. On March 20, 2006, however, respondent advised his client that he could not appear at a pretrial conference scheduled for that day and that Homan should appear and request a continuance. Homan appeared as instructed without respondent.

{¶ 12} After respondent's March 20 communication, Homan never heard from him again. Respondent did not contact Homan even after the municipal court scheduled an April 2006 trial date. In May 2006, Homan appeared in municipal court, pleaded no contest, and received his sentence.

{¶ 13} By neglecting Homan's case and failing to appear with him in court, respondent violated DR 6–101(A)(3).

## Count IV—The Price Case

{¶ 14} In February 2006, respondent defended Robert E. Price against criminal charges in the Garfield Heights Municipal Court, receiving $200 for his services. Respondent entered an appearance and a not-guilty plea on Price's behalf. He also waived the speedy-trial deadline and made a motion for release of his client's vehicle, which the court granted.

{¶ 15} Respondent then failed to appear for proceedings in Price's case. He did not appear at a pretrial conference in March 2006. And even though the court issued an order threatening him with contempt if he did not attend, respondent also did not appear on April 6, 2006, for the rescheduled pretrial conference. In the meantime, Price obtained new counsel, who did appear at the April 6 conference. With his new lawyer's assistance, Price changed his plea and was sentenced.

{¶ 16} By neglecting Price's case and failing to appear with him in court, respondent violated DR 6–101(A)(3).

### Count V—The Frazier–Jackson Case

{¶ 17} In December 2005, Dave A. Frazier Sr. paid respondent $150 to evaluate Latosha Jackson's chances of receiving judicial release from prison under R.C. 2929.20. Respondent claims to have spoken several times with a court bailiff about Jackson's case. Respondent concluded that the court would not likely grant a motion for Jackson's release.

{¶ 18} Respondent advised Frazier and Jackson that they might be better off to wait awhile before seeking judicial release. He also told them that he would need additional fees to file the motion for judicial release. Frazier asked for a refund of his money. Respondent, however, delayed answering Frazier's request.

{¶ 19} By failing to promptly address Frazier's request for an owed refund, respondent violated DR 9–102(B)(4).

### Count VI—The Cimperman Case

{¶ 20} John Cimperman hired respondent to defend Cimperman's son in five criminal cases in the Berea Municipal Court and in one criminal case in Cuyahoga County Common Pleas Court. From December 2005 through February 2006, Cimperman made several payments to respondent for his services.

{¶ 21} The consent-to-discipline agreement provides details about all six cases, but the parties stipulated to misconduct only with respect to the case in common pleas court. In that case, respondent's client had been indicted on charges of attempted robbery, and the court had scheduled the client's arraignment for February 15, 2006. Respondent did not file a notice of his appearance, and neither he nor the client appeared at the arraignment. As a result, the court issued a warrant for the arrest of Cimperman's son, and the son forfeited his bond. The court later appointed a public defender to the son's case.

{¶ 22} Respondent failure to file notice of his appearance or to attend his client's arraignment violated DR 6–101(A)(3).

### Sanction

{¶ 23} In determining the appropriate sanction for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We weigh the aggravating and mitigating factors to decide whether to be lenient or stringent in our disposition. See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and

Discipline ("BCGD Proc.Reg."). In addition to the factors specified in the rule, we may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 24} Respondent breached his duties to conscientiously represent his clients' interests, to promptly account for and return funds to which clients are entitled, and to properly notarize a signature. He does not suggest that he acted without realizing these obligations. Moreover, in addition to causing his clients financial harm, respondent unconscionably abandoned clients at a most dangerous time—during criminal prosecutions.

{¶ 25} To mitigate this misconduct, the parties cite respondent's chemical dependence. Chemical dependence is a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv), provided that there has been (1) a diagnosis of a chemical dependence by a health-care professional or substance-abuse counselor, (2) a determination that the chemical dependence contributed to cause the misconduct, (3) a certification of successful completion of an approved treatment program, and (4) a prognosis from a qualified health-care professional or substance-abuse counselor that the attorney will be able to return to competent, ethical professional practice under specified conditions. The parties agree that all these factors exist.

{¶ 26} Respondent has suffered from chemical dependence since 2005. He sought treatment in 2005, but relapsed. On October 13, 2006, respondent entered the Ed Keating Center, where he has been undergoing treatment and, at least as of July 6, 2007, has continued to live. Respondent assists other residents of the Ed Keating Center with their legal problems and is considered a positive role model.

{¶ 27} Respondent has been sober since October 13, 2006, a circumstance that manifests a sustained period of successful treatment, and he has completed an approved treatment program. Respondent has also entered into a recovery contract with the Ohio Lawyers Assistance Program ("OLAP") and is in compliance. Moreover, a substance-abuse counselor has provided a prognosis that respondent is able, with conditions, to return to the competent, ethical, and professional practice of law. The conditions, set forth with others in the consent-to-discipline agreement, are (1) that respondent continue to live at the Keating Center until October 2007, completing a one-year residence, (2) that respondent continue aftercare at the Keating Center as directed by his substance-abuse counselors, and (3) that respondent continue to abide by the terms of his OLAP contract.

{¶ 28} Also mitigating is the restitution that respondent has made and has promised to make to his clients. Respondent repaid Price's entire $200 fee on April 13, 2007, Frazier's entire $150 fee on May 2, 2007, and $620 to Homan on

May 7, 2007. Respondent has also agreed to repay Griffin and Cimperman amounts that meet their approval. In addition, the parties agreed that respondent has acknowledged and expressed regret for his misconduct, that he exhibits good character and professional competence when not under the influence of his addiction, see BCGD Proc.Reg. 10(B)(2)(e), and that he has cooperated fully in the disciplinary proceeding against him. See BCGD Proc.Reg. 10(B)(2)(d).

{¶ 29} As to aggravating factors, the parties cited respondent's previous disciplinary record, see BCGD Proc.Reg. 10(B)(1)(a), his failure for a time during relator's investigation to have updated his attorney-registration address, and his pattern of neglecting clients' interest, see BCGD Proc.Reg. 10(B)(1)(c).

{¶ 30} In addition to the conditions already listed, the parties proposed that during the stay, respondent serve under a monitored probation, to include supervision by an attorney appointed by relator who will receive periodic updates on respondent's recovery progress from OLAP and the Ed Keating Center, that he perform 200 hours of community service, and that he finish paying restitution to Griffith and Cimperman. This sanction is similar to the one we imposed in *Disciplinary Counsel v. Friedman,* 114 Ohio St.3d 1, 2007-Ohio-2477, 866 N.E.2d 1076 (attorney's license suspended for two years, with final six months of suspension stayed on conditions, including compliance with OLAP drug- and alcohol-addiction recovery contract, for misconduct including neglect of multiple clients' cases and failure to promptly return unearned fees to clients upon request). We agree with the board that this sanction will appropriately protect the public by ensuring that respondent continues his daily efforts at maintaining sobriety.

{¶ 31} Respondent is therefore suspended from the practice of law in Ohio for two years. The second year of the suspension is stayed on the following conditions: (1) respondent shall serve a monitored one-year probation, under Gov.Bar R. V(9), to commence upon his reinstatement and to include regular reports on his recovery progress, (2) respondent shall continue to live at the Keating Center until completion of his one-year residence, (3) respondent shall continue aftercare at the Keating Center as directed by his substance-abuse counselors, (4) respondent shall continue to abide by the terms of his OLAP contract during the entire two-year suspension period, (5) respondent shall perform 200 hours of community service during the two-year suspension period, and (6) respondent shall finish paying restitution to Griffith and Cimperman within 60 days of the date of our order. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and LANZINGER, J., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 32} I respectfully dissent. On these facts, I would suspend the respondent's license to practice for two years, with six months stayed on conditions. As the majority noted, we imposed a two-year suspension with six months stayed on conditions under similar circumstances in *Disciplinary Counsel v. Friedman,* 114 Ohio St.3d 1, 2007-Ohio-2477, 866 N.E.2d 1076. I believe that a suspension of the same length is the appropriate sanction for the respondent's misconduct.

LANZINGER, J., concurs in the foregoing opinion.

---

Walter & Haverfield, L.L.P., and Darrell A. Clay; and Squire, Sanders & Dempsey, L.L.P., and Colin R. Jennings, for relator.

Mary L. Cibella, for respondent.