DISCIPLINARY COUNSEL v. ROBERTS.

[Cite as *Disciplinary Counsel v. Roberts,*
117 Ohio St.3d 99, 2008-Ohio-505.]

(No. 2007–1090—Submitted November 7, 2007—Decided February 14, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Scott R. Roberts of Columbus, Ohio, Attorney Registration No. 0023364, was admitted to the practice law in Ohio in 1979.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondent based on findings that (1) he dishonored his notary jurat on three occasions and (2) he signed a settlement release for two married clients without authority. Relator, Disciplinary Counsel, objects to the recommended sanction, arguing that respondent's misconduct warrants a six-month suspension stayed on conditions. On review, we agree that respondent violated the Code of Professional Responsibility as found by the board and that a six-month suspension with a stay is appropriate.

{¶ 3} Relator charged respondent in a single-count complaint with having violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). A panel of the board heard the case, including the parties' stipulations, and made findings of fact and conclusions of law and recommended a public reprimand. The board adopted the panel's findings of misconduct and the recommendation.

### Misconduct

{¶ 4} In January 2004, respondent agreed to represent an over-the-road truck driver who had been injured in a motor vehicle accident earlier that month. Respondent, then a sole practitioner, met with the man and his wife at their home in a remote area in Michigan, and they entered into a contingent-fee contract. Respondent thereafter communicated frequently with his clients but never met face-to-face with them again.

{¶ 5} The couple had no health insurance. To obtain medical attention on credit, they traveled several times each week to a family practitioner and a

chiropractor 130 to 150 miles away. The couple still owed most of what they had been billed by a Michigan hospital, which would not extend them credit.

*The First Improperly Notarized Signature*

{¶ 6} The husband's injuries kept him from returning to work, and his inability to work strained the couple financially, as they had no other income. Creditors began collection efforts, their mortgagee threatened foreclosure, and the couple feared that their truck might be repossessed. The couple regularly related their financial worries to respondent, who described them as "pleasant people" in "desperate financial straights" and "scared to death."

{¶ 7} Respondent acted quickly to negotiate a settlement because of his clients' financial situation. Geico Insurance and Cincinnati Insurance Company provided coverage for the husband's injuries, and respondent entered into settlement agreements with both insurance companies. In September 2004, respondent settled his clients' claims with Geico Insurance for $100,000. The next month, he settled with Cincinnati Insurance Company for $47,500.

{¶ 8} During these negotiations, respondent sent his clients a release to allow him to obtain wage information for a third insurance carrier. The husband signed the release, but the carrier returned it because the signature had not been notarized. Upon inquiry, respondent learned that the couple had had no money for gas to drive to the nearest town for the needed notarization. Respondent resolved the problem by changing both the date of the release and the date of the husband's signature and then notarizing the signature, falsely representing that his client had signed in his presence. He later advised his clients that he had notarized the release.

{¶ 9} Respondent conceded that he had made a serious mistake by failing to properly notarize the release for wage information. Respondent explained that he had "lost focus" in his zeal to settle the case and transfer the proceeds to his desperate clients.

*The Unauthorized and Improperly Notarized Signatures*

{¶ 10} Respondent had his clients sign a limited power of attorney authorizing him to settle their claims with Geico Insurance, also to expedite the settlement process. From the $100,000 settlement with this insurer, respondent sent his clients $39,313.89, representing their share of the proceeds, with a disbursement sheet to account for the rest. But then, respondent signed his clients' names to a release of claims against Cincinnati Insurance Company. He notarized the signatures that purported to be his clients', falsely swearing that they had personally appeared before him. He asked an assistant to sign the release as a witness.

{¶ 11} Respondent again acknowledged his mistakes in taking these shortcuts. Afterward, the Cincinnati Insurance Company paid the settlement proceeds to respondent, who sent a check to his clients for $31,620.07, representing their share. The wife received the check, apparently endorsing it for her husband without his authority, and deposited it into their joint checking account. She eventually withdrew the money without her husband's knowledge. The injured client did not discover that his wife had stolen the settlement proceeds until he called respondent several months later to ask what had happened to the money.

{¶ 12} Respondent admitted and the board found that he had violated DR 1–102(A)(4) and (6) by dishonoring his notary jurat and signing his clients' names without authority. We adopt these findings of misconduct.

## Sanction

{¶ 13} In determining the appropriate sanction to impose for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We weigh the aggravating and mitigating factors to decide whether circumstances warrant a more lenient or exacting disposition. See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Because each disciplinary case involves unique facts and circumstances, we are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 14} Respondent owed his clients, the public, and the judicial system a duty to conscientiously observe his duties as a notary public. As we said in *Lorain Cty. Bar Assn. v. Papcke.* (1998), 81 Ohio St.3d 91, 93–94, 689 N.E.2d 549, authenticating a document through notarization is not a trifle, and the failure to do so properly is a fraud on anyone who later relies on the document. Respondent owed an equally important duty to his clients, the public, and the judicial system to ensure the authenticity of documents executed at this direction. Respondent concedes that he violated these duties knowingly.

{¶ 15} When a lawyer notarizes a signature knowing that it is forged, and especially when the lawyer commits the forgery, an actual suspension is warranted. Thus, in *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, we suspended a lawyer for one year, staying only six months of the suspension, because the lawyer had advised the client to forge his senile grandmother's name on a power of attorney so that he could sell her property to pay her living expenses without pursuing a guardianship. The lawyer then

notarized the power of attorney, backdated it to a time before the grandmother's incapacitation, and instructed his secretary to witness the forged signature.

{¶ 16} The lawyer in *Shaffer* presented much evidence in mitigation. He showed his otherwise good character and reputation, contrition, cooperation in the disciplinary proceedings, lack of a prior disciplinary record, and good intentions. But he also engaged in a course of conduct that "perpetrated fraud on the court system and public by sidestepping safeguards in place to protect sellers and buyers of real estate." *Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429. Because the lawyer had facilitated a series of falsifications, we could not immediately guarantee that he would not repeat this misconduct.

{¶ 17} Failing to properly notarize a document, although a violation of DR 1–102(A)(4) for which an actual suspension usually follows, may warrant a lesser sanction depending on the presence of mitigating factors. *Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778, ¶ 5; *Cleveland Bar Assn. v. Russell*, 114 Ohio St.3d 171, 2007-Ohio-3603, 870 N.E.2d 1164, ¶ 10. A public reprimand will issue if the lawyer does nothing improper in addition to notarizing a signature affixed outside the lawyer's presence. *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 15. When a lawyer signs a document for another person under the mistaken belief that he or she has this authority, however, we have issued a six-month suspension and stayed the suspension on conditions. *Disciplinary Counsel v. Freedman*, 110 Ohio St.3d 284, 2006-Ohio-4480, 853 N.E.2d 291, ¶ 17 (lawyer who signed deed and mortgage for his wife without her specific authority, a signing that the wife later ratified during divorce proceedings, received a six-month suspension, all stayed).

{¶ 18} Mitigating factors in this case include that respondent has no prior disciplinary record, did not act out of self-interest, cooperated in the disciplinary process, and established his good character and reputation apart from the underlying events. See BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e). He did commit more than one infraction, an aggravating factor under BCGD Proc.Reg. 10(A)(1)(d). But unlike the respondent in *Shaffer*, respondent's willingness to accept responsibility for his mistakes, as shown by his often repeated apologies, persuades us that he will not repeat his misconduct.

{¶ 19} Respondent signed twice on behalf of others without authority, induced an administrative assistant to falsely witness the signatures, and dishonored his notary jurat three times, but because of his contrition, heretofore unblemished record, and good, albeit misguided, intentions, we do not require an actual suspension. During the board proceedings, respondent acknowledged in stipulations that a six-month suspension, stayed on condition, is called for in this case.

In imposing this sanction, more stringent than that recommended by the board, we sustain relator's objection.

{¶ 20} We suspend respondent from the practice of law in Ohio for six months and stay the entire suspension on the condition that respondent commit no further misconduct. If respondent violates the terms of the stay, the stay will be lifted, and respondent will serve the entire suspension. Costs are taxed to respondent.

Judgment accordingly.

Moyer, C.J., and Pfeifer, Lundberg Stratton, O'Connor, Lanzinger, and Cupp, JJ., concur.

O'Donnell, J., dissents and would publicly reprimand respondent.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman and Joseph Caligiuri, Assistant Disciplinary Counsel, for relator.

Mitchell Allan Catalano & Boda Co. and William Mann, for respondent.