[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Clark,* Slip Opinion No. 2018-Ohio-4491.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4491

DISCIPLINARY COUNSEL *v.* CLARK.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Clark,* Slip Opinion No. 2018-Ohio-4491.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and former Code of Professional Responsibility for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaging in conduct prejudicial to the administration of justice—Conditionally stayed six-month suspension.*

(No. 2018-0808—Submitted June 26, 2018—Decided November 8, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-001.

_____

**Per Curiam.**

{¶ 1} Respondent, John David Clark, of Canton, Ohio, Attorney Registration No. 0068809, was admitted to the practice of law in Ohio in 1997. In

December 2017, relator, disciplinary counsel, charged him with improperly notarizing client signatures on multiple legal documents. The Board of Professional Conduct considered the case on the parties' consent-to-discipline agreement. *See* Gov.Bar R. V(16).

{¶ 2} In the agreement, the parties stipulated that in 2014, Clark's law firm conducted an unrelated review of his client files. During that review, the law firm discovered that over a seven-year period, Clark had engaged in at least eight incidents of false notarization and/or backdating of clients' legal documents. The following three incidents are representative examples of Clark's misconduct.

{¶ 3} In 2006, Clark witnessed his clients sign a general warranty deed and then notarized their signatures. However, he dated the document for five days in the future to coincide with the property's transfer date. He therefore falsely attested to the date that his clients had signed the document and acknowledged their signatures before him. In 2012, Clark e-mailed various documents to clients with instructions to sign and return them. His e-mail also stated, "[D]o not worry about the Notary Public." After the clients returned the documents, Clark notarized their signatures and thereby falsely represented that the documents had been personally acknowledged before him. In 2013, two of Clark's clients signed various trust-related documents in his presence, and he signed the documents as a witness. But Clark then backdated the documents and notarized the signatures on one of the documents using the same false date. He therefore falsely attested to the date that his clients had appeared before him to sign the documents.

{¶ 4} The parties' consent-to-discipline agreement identified five additional incidents of false notarization. After the law firm discovered Clark's misconduct, he resigned from the firm and self-reported his actions to relator. The parties also stipulated that Clark had expressed sincere remorse for his actions and apologized to his former clients, that he had not received any additional fees as a result of his

misconduct, and that he believed he had engaged in the conduct for his clients' convenience.

{¶ 5} The parties stipulated that Clark violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).[1] In addition, the parties agreed that as aggravating factors, Clark engaged in a pattern of misconduct and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). Stipulated mitigating factors included the absence of prior discipline, full and free disclosures to the board and a cooperative attitude toward the disciplinary proceedings, and a reputation for good character. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). As a sanction, the parties jointly recommend that we impose a conditionally stayed six-month suspension.

{¶ 6} The board found that the consent-to-discipline agreement conforms to the requirements of Gov.Bar R. V(16) and recommends that we adopt the agreement in its entirety. In support of the recommended sanction, the board cited *Disciplinary Counsel v. Roberts*, 117 Ohio St.3d 99, 2008-Ohio-505, 881 N.E.2d 1236, and *Ohio State Bar Assn. v. Trivers*, 123 Ohio St.3d 436, 2009-Ohio-5285, 917 N.E.2d 261.

{¶ 7} In *Roberts*, an attorney signed a settlement release for two married clients without their authority, notarized the clients' purported signatures, and asked his assistant to sign the release as a witness. In addition, the attorney changed the dates on a document previously executed by the husband and then notarized the husband's signature, although the attorney had not witnessed the husband sign the

---

[1] Because two of the incidents occurred before February 1, 2007, the effective date of the Rules of Professional Conduct, relator charged Clark under both the former Code of Professional Responsibility and the current Rules of Professional Conduct.

document. We noted that "[w]hen a lawyer notarizes a signature knowing that it is forged, and especially when the lawyer commits the forgery, an actual suspension is warranted." *Id.* at ¶ 15. However, "[f]ailing to properly notarize a document * * * may warrant a lesser sanction depending on the presence of mitigating factors," and "[a] public reprimand will issue if the lawyer does nothing improper in addition to notarizing a signature affixed outside the lawyer's presence." *Id.* at ¶ 17. Although the attorney in *Roberts* signed his clients' names without their authority and dishonored his notary jurat three times, we concluded that in consideration of the relevant mitigating factors—including the attorney's clean disciplinary record, remorse, good character, cooperation in the disciplinary process, and "good, albeit misguided, intentions" to help his clients—a conditionally stayed six-month suspension was the appropriate sanction. *Id.* at ¶ 18-20.

{¶ 8} In *Trivers*, an attorney notarized the signatures on nine documents related to several property transfers, although he had not personally witnessed any of the signatures. In addition, the attorney later participated in a meeting in which a power of attorney was fraudulently created to cover up his misconduct. We concluded that his multiple acts of fraud distinguished the case from those in which we had imposed public reprimands or fully-stayed suspensions for isolated instances of notary abuse. We therefore suspended the attorney for one year, with six months conditionally stayed. *Id*. at ¶ 10.

{¶ 9} Here, there is no allegation that Clark notarized a forged signature or that he forged his clients' signatures. The board, however, found that because he engaged in eight instances of improper notarizations over a seven-year period, a more severe sanction than a public reprimand was warranted. The board also distinguished Clark's conduct from that of the attorney in *Trivers*, who participated in an effort to cover up his notary abuse and failed to acknowledge the wrongful nature of his conduct. Accordingly, the board recommends that we impose the

4

same sanction as we imposed in *Roberts*—a conditionally stayed six-month suspension.

{¶ 10} Upon our review of the record, we agree that Clark engaged in the stipulated misconduct and that a stayed six-month suspension is appropriate. As we stated in *Roberts*, "authenticating a document through notarization is not a trifle" and an attorney owes "clients, the public, and the judicial system a duty to conscientiously observe his duties as a notary public." 117 Ohio St.3d 99, 2008-Ohio-505, 881 N.E.2d 1236, at ¶ 14.

{¶ 11} John David Clark is suspended from the practice of law for six months, with the entire suspension stayed on the condition that he engage in no further misconduct. If Clark fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Clark.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Crabbe, Brown & James, L.L.P., and Larry H. James, for respondent.

_____